

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 10, 1961

Mr. W. G. Walley, Jr.
Acting Criminal District Attorney
Jefferson County
Beaumont, Texas

Dear Mr. Walley:

Opinion No. WW-1086

Re: Authority of a District
Attorney or a Grand Jury
to employ a public account-
ant to audit county records,
municipal records, records
of private corporations or
individuals.

You have asked the following questions:

1. Does the District Attorney and/or Grand Jury have authority to employ a public accountant to audit

        A.  Records of the County;

        B.  Records of incorporated municipalities;

        C.  Records of private corporations; and/or

        D.  Records of private individuals?

2. If so, from what fund should these services be paid?

It is clearly the duty of the grand jury to inquire into all alleged felony violations of the law, Article 381, Vernon's Code of Criminal Procedure. Generally investigations are made for the grand jury by the local law enforcement officials, mainly the Sheriff's office, local police officers, constables and the District Attorney's office. The Department of Public Safety also provides assistance for the grand jury when requested. There is no specific statutory authority giving the grand jury power to expend county funds for the purpose of employing an accountant, since said function is generally handled for the grand jury by other officials who have such funds available; however, if the grand jury has funds pursuant to Section 3 of Article 637, Vernon's Penal Code, the grand jury is clearly authorized to expend said funds for the purpose of investigating violations of any of the provisions of the Penal Code. Section 3 of Article 637 of Vernon's Penal Code provides:

"Section 3.  If upon a hearing of the matter referred to in Article 636, Penal Code of Texas, the Justice of the Peace, County Judge or District Judge before whom the cause is pending, shall determine that the property seized is a gaming table, bank or gambling paraphernalia and equipment per se, or if the Justice of the Peace, County Judge or District Judge shall determine that the same, or any part thereof, was in fact used as equipment or paraphernalia for a gambling house or was being used for gaming purposes, then any money or coins seized in or with said equipment or paraphernalia shall, by order of the Court, be declared confiscated, and the Court shall cause the same to be delivered to the State of Texas or any political subdivision thereof, or to any State institution to be used by it for its own use and benefit, or the Court may in its discretion order such money or coins to be delivered to the Grand Jury of the County in which such equipment or paraphernalia was seized, to be used by said Grand Jury for the purpose of investigating the violations of the gaming laws of this State or for the purpose of investigating violations of any of the provisions of the Penal Code of this State.  At the end of the term of each Grand Jury and before the discharge of the same, the Grand Jury shall report to the District Judge impanelling the same the amount of money received under the provisions of this Section and an accounting of all funds expended, and the balance of such funds, if any, shall be turned over to the Clerk of said District Court, to be held by said Clerk until the next Grand Jury is impanelled, at which time such money will be turned over and delivered to such succeeding Grand Jury."  (Emphasis added.)

It has been contended that Section 24 of Article 16 of the Constitution of the State of Texas would prohibit the use of forfeitures for any use other than for laying out and working public roads and the building of bridges.  Section 24 reads:

"The Legislature shall make provision for laying out and working public roads, for the building of bridges, and for utilizing fines, forfeitures, and convict labor for all these purposes."

This office has held that when funds derived under Article 636, 637, Vernon's Penal Code, are turned over to the Commissioners Court, they must go into the road and bridge fund of the county.  Attorney General's Opinion V-469.  This opinion based its conclusion upon examination of Section 24 of Article 16 of the Constitution, and Articles 1626 and 1628, Vernon's Civil Statutes.  Since Articles 1626 and 1628 clearly cover the problem involved, the discussion as to the applicability of

of Section 25 of Article 16 of the Constitution was surplusage. The view expressed in Attorney General's Opinion V-469 was in line with Attorney General's Opinion O-6805.

Section 24 of Article 16 should not be construed as requiring that all fines, forfeitures and uses of convict labor be designated for use upon public roads and bridges only.

It has been the long standing policy of this State to utilize fines, forfeitures and convict labor for purposes other than work on the public roads and bridges.

The Texas Liquor Control Act by Article 666-30, Vernon's Penal Code, provides that forfeitures be used by the Texas Liquor Control Board in the operation of that Board.  Fines collected for violation of highway laws are not set aside for the exclusive purpose of maintaining roads and bridges.  See Article 6701b, Section 144, Vernon's Civil Statutes.

The Supreme Court in H. & T. Ry. v. Herrin Brothers, 63 Tex. 256 (1885), held that Section 24 of Article 16 of the Constitution referred to such fines and forfeitures as under the law may inure to the public.  This holding would include the civil fines and forfeitures provided in our Anti-Trust Laws and the Business Corporation Act.

Civil fines and penalties collected for violation of the Texas Business Corporation Act, the Texas Anti-Trust Laws and other laws of this nature are not put into the road and bridge fund of any county and are not expended for the roads and bridges of the State, but are appropriated for other purposes.

The "Intdrpretive Commentary" contained in Vernon's Constitution of the State of Texas, Annotated under Section 24, Article 16, indicates that at the time the constitutional provision under discussion was passed, the prison population has trebled in a single year and there was a great need for employment of convicts and that the consitutional provision was passed to provide "additional" employment for convicts. This provision has never been interpreted to mean that convicts could not be used for other purposes.  See Article 674, Vernon's Code of Criminal Procedure and Article 6864, Vernon's Civil Statutes.

It is clear from the historical background of Section 24, Article 16, that said section was intended to grant the Legislature additional powers, and was not intended to limit the powers of the Legislature to utlize fines, forfeitures and convict labor for other purposes.

For further discussion on this point see Attorney General's Opinion No. WW-1079.

In addition to the above funds which are available to the grand jury, the grand jury is also authorized to request that the District Court appoint a committee of three to examine the finances of the county. Article 1638, Vernon's Civil Statutes. These committeemen are entitled to receive three ($3) Dollars a day, not to exceed five (5) days, for the performance of their duties, said money to be paid out of the county treasury upon certificate of the District Judge. Article 1640, Vernon's Civil Statutes.

Upon examination of the statutes and laws of this State we can find no other authority upon which an expenditure of funds, for the purpose of hiring accountants in the course of an investigation, can be made by a grand jury. Where there is no authority on the part of the county or the government agency involved to enter into the contract, a recovery against the county, or general fund thereof, based upon quantum meruit will not lie. Pritchard and Abbott v. McKenna, 343 S.W.2d 752 (Civ.App., 1961, writ pending). Therefore, the general funds of the county would not be liable for any contract entered into by the grand jury for auditing purposes on the basis of contractual obligation or quantum meruit, since the grand jury has no authority to commit the general funds of the county, but is only authorized to spend the funds, if any, acquired by virtue of Article 637, Vernon's Penal Code.

Article 52-160b, Vernon's Code of Criminal Procedure, sets up the office of Criminal District Attorney for Jefferson County. Under Article 3899, Section (b), Vernon's Civil Statutes, a Criminal District Attorney is authorized to charge to his county all reasonable expenses necessary in the proper and legal conduct of his office. Said Article provides:

"Each officer named in this Act, where he receives a salary as compensation for his services, shall be entitled and permitted to purchase or charge to his county all reasonable expenses necessary in the proper and legal conduct of his office . . ."

When a criminal district attorney believes that the work in question would be a material aid to his office in preparing criminal cases for trial it would be proper for him to have certain services performed. Attorney General's Opinion WW-874.

Article 3899, Section (b) continues:

". . .Such expenses to be passed on, predetermined and allowed in the time and amount, as nearly as possible,

by the Commissioners Court once each month for the
ensuing month, upon the application by each officer,
stating the kind, probable amount of expenditure and
the necessity for the expenses of his office for such
ensuing month, which application shall, before presenta-
tion to said court, first be endorsed by the county
auditor, if any, otherwise the county treasurer, only
as to whether funds are available for payment of such
expenses. . .

"Such purchases shall be made by each officer,
when allowed, only by requisition in manner provided
by the county auditor, if any, otherwise by the Com-
missioners Court. Each officer, shall, at the close
of each month of his tenure of office, make an itemized
and sworn report of all approved expenses incurred by
him and charged to his county, accompanying such report
with invoices covering such purchases and requisitions
issued by him in support of such report. If such
expenses be incurred in connection with any particular
case, such report shall name such case. Such report,
invoices, and requistions shall be subject to the audit
of the county auditor, if any, otherwise by the Com-
missioners Court, and if it appears that any item was
not incurred by such officer, or that such item was not
a necessary or legal expense of such office, or purchased
upon proper requisition, such item shall be by said county
auditor  or court rejected in which case the payment of
such item may be adjudicated in any court of competent
jurisdiction. All such approved claims and accounts shall
be paid from the Officers Salary Fund unless otherwise pro-
vided herein.

". . ."

Attorney General's Opinion V-976, held that the District
Attorney was acting in the proper and legal conduct of his office
when he requested the District Court Reporter to prepare a transcript
of the testimony given at an examining trial, for presentation to the
Grand Jury, and stated that a diligent district attorney would want to
preserve such testimony, because in the event of indictment it might
become necessary during the trial of the accused to use the testimony
taken in the examining trial. Attorney General's Opinion V-538, dis-
cussed a fact situation in which a justice of the peace called an
inquest and the county attorney desired to have the testimony of the
witnesses transcribed to aid and assist him in the prosecution of the
case should a criminal charge result. For this purpose he engaged a
reporter to be present to transcribe the testimony. Based upon these
facts it was held that:

> "The county attorney . . . was authorized to require that the testimony taken at an inquest be transcribed in question and answer form for use by him in the conduct of his office in investigating circumstances in a death and to employ a reporter to take and transcribe such testimony at the expense of the county."

The question of whether the prior endorsement of the County Auditor or County Treasurer, as the case may be, and the prior approval of the Commissioners Court is necessary before incurring such expense, under Article 3899, Section (b) is discussed in State v. Carnes, 106 S.W.2d 397, 399 (Civ.App. 1937) and Attorney General's Opinion V-1149. This case concerns interpretation of said article concerning expenditures by the sheriff's department:

> "While the entry by the commissioners' court of an order authorizing the appointment of deputies and fixing their compensation upon proper application by the officer in accordance with article 3902 is a condition precedent to his claiming credit, as a matter or right, for salaries paid his deputies, this statutory provision was not intended as a limitation on the power of the commissioners' court, and any affirmative action of the court authorizing or approving the expenditure before or after it was incurred would bind the county and authorize the deduction. The commissioners' court may ratify that which it might have authorized originally. Cameron County v. Fox, 61 S.W.2d 483."   (Emphasis added.)

If the expense was incurred by the District Attorney, such expenditure may be made out of the officer's salary fund with the prior approval or subsequent ratification of the Commissioners Court. Attorney General's Opinion V-1149.

### S U M M A R Y

(1)  The Grand Jury of Jefferson County may hire an accountant to investigate any records during the course of investigating for violations of the Penal Code in the event that funds are available by virtue of Sec. 3 of Article 637, V. P. C.

(2)  The Criminal District Attorney has the authority to employ a public accountant to audit any records, if reasonably necessary in the investigations of a criminal violation or in preparing a criminal case for trial, payable from the officer's salary fund.

Mr. W. G. Walley, Jr., Page 7    (WW-1086)

Very truly yours,

WILL WILSON
Attorney General of Texas

By *Cecil Cammack Jr*

Cecil Cammack, Jr.
Assistant Attorney General

CC:ca

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

John Reeves
Mary K. Wall
Maston Courtney

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Morgan Nesbitt